IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


BRIAN MOSER,                                          05-CV-3060-BR

          Plaintiff,

                                                      OPINION AND ORDER

v.

R. B. MATHESON POSTAL
SERVICES, INC., a California
corporation, d/b/a MATHESON
FLIGHT EXTENDERS,

          Defendant.


**RICHARD C. BUSSE**
**MATTHEW B. DUCKWORTH**
Busse & Hunt
521 American Bank Building
621 S.W. Morrison Street
Portland, OR  97205
(503) 248-0504

          Attorneys for Plaintiff


1 - OPINION AND ORDER

**PATRICK D. GILROY**
**WADE R. KEENON**
The Gilroy Law Firm, PC
5100 S.W. Macadam Avenue, Suite 240
Portland, OR  97239
(503) 225-5559

      Attorneys for Defendant

**BROWN, Judge.**

    This matter comes before the Court on Defendant R. B.
Matheson Postal Services, Inc.'s Motion for Summary Judgment of
(#18).

    The Court heard oral argument on Defendant's Motion on
May 4, 2006.  At the conclusion of the hearing, the Court found
there were unresolved issues of material fact that precluded
Defendant's Motion as to Plaintiff Brian Moser's claim for
discrimination in retaliation for filing a worker's compensation
claim.  The Court, therefore, denied that part of Defendant's
Motion.  The Court took under advisement Defendant's Motion
against Plaintiff's remaining claim that Defendant violated
Plaintiff's rights under the Americans with Disabilities Act
(ADA), 42 U.S.C. § 12101, *et seq.*, and/or the Oregon Disabilities
Act, Or. Rev. Stat. § 659A.100, *et seq.*[1]

    For the reasons that follow, the Court **GRANTS** Defendant's
Motion for Summary Judgment on Plaintiff's claim for disability

---

[1] It is not clear from the Complaint whether Plaintiff
intended to assert a claim for violation of the ADA or Oregon's
Disabilities Act.

2 - OPINION AND ORDER

discrimination.

## BACKGROUND

The following facts are undisputed except as otherwise noted:

Defendant provides mail loading and unloading services at airport terminals.  Defendant unloads mail from cargo planes into "tugs," which are four-wheeled gas-powered vehicles that tow trailers.  Tug operators drive the tugs into the warehouse for unloading, pick up empty trailers from the warehouse, and take the trailers outside for later use.

Defendant hired Plaintiff in February 2002 to operate a tug at its Portland, Oregon, terminal.  Defendant trained Plaintiff in the use and safety of operating tugs.  One of the principal responsibilities of tug operators is to drive in a way that is safe for pedestrians and co-workers.  Driving a tug at an "unsafe or excessive speed" is a major work-safety violation for which Defendant may terminate an employee.

On October 6, 2004, Plaintiff filed a workers' compensation claim for abdominal wall strain.  On January 20, 2005, Plaintiff injured his back while unloading mail.  Plaintiff did not report the injury to Defendant until January 23, 2005, in violation of Defendant's company policy that requires employees to report on-the-job injuries immediately.  On February 3, 2005, Defendant

3 - OPINION AND ORDER

issued Plaintiff a written reprimand for failing to report the
injury immediately.

On February 4, 2005, Plaintiff's doctor released him to
return to work with restrictions of "Minimal stooping, twisting,
bending.  Minimal push, pull over 10 pounds.  Minimal lifting
repetitively over 10 pounds.  Minimal standing."

On March 16 or 17, 2005, one of Defendant's employees, Anne
Roshon, reported to station manager Jon Heckman that Plaintiff
"almost hit somebody" in the warehouse on March 15, 2005, because
he was driving too fast.  On Friday, March 18, 2005, Heckman sent
an email to Defendant's risk manager, Larry Lockhart, and
Defendant's general manager, Bob Phelan, in which Heckman stated:

> I'm not sure how to approach this but here is an
> issue that happened regarding Bryan.  On Tuesday
> of this week, I had an employee complaint about an
> unsafe act with him on a tug.  Apparently he drove
> through our warehouse at full speed while our
> employees were working . . . .  I've investigated
> the employee's concern and found that about 7 or 8
> other employees witnesses or heard it happened.
> I'm currently getting statements from all of them.
> Bryan is still on light duty with the lumbar
> strain . . . .
>
>                    * * *
>
> My concern is that he is going to hurt someone
> else or himself again. . . .  I know you probably
> think the case is weak but is there a chance we
> could cut him loose for this if I get statements
> from the witnesses who saw him do this?  I'll be
> honest that part of my motivation is also that he
> is a very poor worker (I made the mistake of
> hiring him), but I also don't need the headaches
> and aggravation of another injury or accident

4 - OPINION AND ORDER

>       because he was being careless.  Your thoughts
>       . . . ?

On Monday, March 21, 2005, Lockhart responded:

>       Jon, it makes no difference if an employee is on
>       mod[ified] or regular duty when some unsafe act
>       happens.  Proceed with disciplinary action as you
>       would any other time.  As to the degree of
>       discipline, Bob is the better person to provide
>       that answer.  Termination has to be discussed with
>       him prior to any such action.  It may be that a
>       couple of days off will help him remember, if he
>       has some redeemable qualities.

On March 21, 2005, Phelan also responded to Heckman's email and

stated:

>       Jon, I'm in agreement with Larry on this.  We take
>       Safety very seriously, Mr. Bryan Moser Blanton
>       [*sic*] disregard to the safety [*sic*] is not
>       something I want to show any type of leniency on.
>       If we need to set an example of a zero tolerance
>       policy than [*sic*] I would say this would be as
>       good of time as ever.  Please get with Mike
>       Wilbourn regarding what we can do with this
>       employee.  I would recommend Termination!

On March 22, 2005, Mike Wilbourn, Defendant's Human Resources

Director, responded:

>       We try to be consistent with disciplinary action.
>       We gave a Seattle THS employee a 2-day suspension
>       for just failing to brake properly and almost
>       hitting another employee.  There no speed and
>       no hazardous driving.  In your case, you have
>       speed, hazardous driving and putting several
>       employees at risk.  I agree with Bob that
>       termination is appropriate.  You'll still be faced
>       with an employee on WC, but that's Larry [*sic*]
>       problem, not yours.

Heckman collected statements from five employee-witnesses in

which they alleged Plaintiff was operating the tug at a high rate

5 - OPINION AND ORDER

of speed.  After the employee statements were read to Wilbourn,
he authorized Plaintiff's termination.

On March 25, 2005, Defendant terminated Plaintiff's
employment for operating a tug unsafely.

On May 25, 2005, Plaintiff filed a complaint in Multnomah
County Circuit Court alleging Defendant discriminated against him
(1) in violation of Oregon Revised Statutes § 659A.040 by
retaliating against him for filing a worker's compensation claim
and (2) because Defendant perceived Plaintiff as disabled.

On July 18, 2005, Defendant removed the action to this Court
on the basis of diversity jurisdiction.  On March 10, 2006,
Defendant filed a Motion for Summary Judgment as to all of
Plaintiff's claims.  As noted, the Court denied Defendant's
Motion during oral argument as to Plaintiff's worker's
compensation discrimination claim.

## **STANDARDS**

Fed. R. Civ. P. 56(c) authorizes summary judgment if no
genuine issue exists regarding any material fact and the moving
party is entitled to judgment as a matter of law.  The moving
party must show the absence of an issue of material fact.  *Leisek
v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).  In
response to a properly supported motion for summary judgment, the
nonmoving party must go beyond the pleadings and show there is a

6 - OPINION AND ORDER

genuine issue of material fact for trial.  *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Id.*  A mere disagreement about a material issue of fact, however, does not preclude summary judgment.  *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required.  *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

## DISCUSSION

Plaintiff alleges Defendant perceived him as disabled and retaliated against him on the basis of his perceived disability

7 - OPINION AND ORDER

in violation of his rights under the ADA and/or the Oregon

Disabilities Act.

**A.    Standards**

The ADA provides in pertinent part:

> No covered entity shall discriminate against a
> qualified individual with a disability because of
> the disability of such individual in regard to job
> application procedures, the hiring, advancement,
> or discharge of employees, employee compensation,
> job training, and other terms, conditions, and
> privileges of employment.

42 U.S.C. § 12112(a).  "The term "disability" means, . . . being

regarded as having such an impairment."  42 U.S.C. § 12102(2)(C).

Oregon law provides:

> It is an unlawful employment practice for any
> employer to refuse to hire, employ or promote, to
> bar or discharge from employment or to
> discriminate in compensation or in terms,
> conditions or privileges of employment because an
> otherwise qualified person is a disabled person.

Or. Rev. Stat. § 659A.112(1).  Oregon law defines a disabled

person as an "individual who has a physical or mental impairment

that substantially limits one or more major life activities . . .

or is regarded as having such an impairment."  Or. Rev. Stat.

§ 659A.100(1).

Oregon Revised Statutes § 659A.139 requires Oregon's

disability act to be construed to the extent possible in a manner

consistent with similar provisions of the ADA.  The same

analysis, therefore, applies to Plaintiff's claims under both the

ADA and Oregon's disability act.  *See Wheeler v. Marathon*

8 - OPINION AND ORDER

*Printing, Inc.*, 157 Or. App. 290, 301 n.6 (1998).

"Perceived-as-disabled" claims generally arise when an employer mistakenly believes an individual has a substantially limiting impairment that he does not have or mistakenly believes an individual "has a substantially limiting impairment when, in fact, the impairment is not so limiting."  *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 490 (1999).

> The term substantially limits means:  (I) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).  Among other things, working, learning, walking, hearing, speaking, seeing, breathing, and caring for oneself are considered major life activities.  29 C.F.R. § 1630.2(I).

**B.    Discussion**

To support his perceived disability claim, Plaintiff relies on Heckman's March 18, 2005, email to management.  That email, however, does not make any reference to Plaintiff being disabled or having a disability.  Although Heckman might have been concerned about Plaintiff's worker's compensation claim or the possibility that Plaintiff might injure himself again and file another claim, a reasonable juror could not conclude Heckman's

9 - OPINION AND ORDER

email supports a claim for perceived disability discrimination.

Plaintiff also relies on Heckman's comment made at the meeting in which Plaintiff was fired:  "Because of [Plaintiff's] injury[, Heckman] didn't know how long [Plaintiff] was going to be able to stay here anyway."  This comment, however, is a stray remark even when viewed in the light most favorable to Plaintiff and, therefore, it is insufficient to establish a claim for perceived disability discrimination.  *See Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993)(stray remark insufficient to preclude summary judgment).  *See also  Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir. 1990)(same).

On this record, the Court concludes Plaintiff has not shown there is a triable issue as to whether Defendant perceived Plaintiff as disabled under the ADA or Oregon's disability discrimination act.

Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's disability discrimination claim.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (#18) as to Plaintiff's claim for disability

10 - OPINION AND ORDER

discrimination.

IT IS SO ORDERED.

DATED this 15th day of May, 2006.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


11 - OPINION AND ORDER